Hitchcock, J.
In order to determine the propriety of the decision of the court of common pleas, it is necessary to ascertain the object for which the testimony, which was excluded and overruled, was offered. This object, as appears by the bill of exceptions, was to prove that an order of sale had been issued by the court of common pleas, and delivered to the county auditor of the county of Gallia; as proof also of the fact that notice of the sale of said land had been duly given ; as proof that it was offered for sale at public auction, and not sold for want of bidders.
Previous to the act of February 20,1820, entitled “ an act levying ■a tax on land"—Chase’s Stat. 1101—a distinction had been made -between the lands of residents and non-residents. The lands of the former were listed and the taxes paid either in the townships •or county where the lands were situated or where the owners resided. For the convenience of non-residents the state was divided into collection districts, In each district a collector was appointed, .and lands were entered for taxation with, and the taxes paid tq, these district collectors. Lands were not taxed according to their .actual value, but were divided into first, second, and third rates, and a specified sum levied upon each rate, and the amount thus levied changed from time to time as the exigencies of the case might require. These laws all provided for the sale of the land, in default of payment of the taxes. In early times such sales were made by the sheriffs of the respective counties. Subsequent to the division of the state into collection districts, the sales were made by the district collectors. Certain preliminary steps were necessary before the sale, one of which was an advertisement. After sale, *if there was a controversy as to the validity of the title acquired by the purchaser, no one doubted that the face that all the preliminary steps had been taken, might be proven by parol. For some years previous to 1820, there had been no sales ior taxes, for although much land was liable to be sold under existing laws, yet the general assembly from time to time postponed sales by special enactment. This was done, however, without relinquishing or remitting taxes due or the penalties thereon.
*441 By the act of February, 1820, the system was changed so far as respects the mode of listing land and collecting taxes. By this act the office of county auditor was created,'and it was made the duty of that officer, among other things, to take a list of all lands in his proper county, to make out duplicates, etc. For the purpose of collection, a county collector was to be appointed. This collector settled his accounts with the county auditor and returned to him a list of those lands upon which the tax was not paid. It was made the duty of the county auditor to make return to the •state auditor, and if any land was delinquent for two successive years, it was to be sold for the taxes. Section 39 of the act provides “ that all sales, of land shall be made by the county auditor, .■at the court-house or place where courts are usually holden in his county, on giving notice by advertisement as aforesaid, which notice shall be given at least six months before the day fixed upon for such sale, and at such sale the person who will pay the tax, interest, and penalties charged and remaining unpaid upon any tract of land so advertised and offered for sale, for the least quantity thereof, shall be considered as the purchaser of such quantity; and the county auditor shall on such sale being made, make a fair entry descriptive thereof, in a book to be provided by him for that purpose, and shall also record in said book all the proceedings relative to ■the advertising, selling, and conveying said delinquent land, which record shall be good evidence in all courts holden ivithin the state."
Counsel for defendant in error suppose that the latter «clause of this section is decisive of this case, and that no other evidence except that which is derived from this book of the auditor can be admitted to prove anything relative to the “advertising, selling,” etc., of lands for taxes. This position would probably be correct with respect to any land sold under this act, or some of the subsequent acts which are to be found in our statute-books. And it would seem to me, that in the case under consideration, the book which was introduced from the auditor’s office, contains entries substantially such as are here required. But of this there may perhaps be some doubt. But it must be remembered that this act has no reference to lands which were delinquent and liable to sale previous to 1820, any further than this, they might be listed, but were not to be charged with the previous unpaid taxes and penalties. By section 61, it is provided “that the sale of all lands; which, by the laws now in force, would be exposed to sale for the *442 non-payment of taxes, interest, and penalties due thereon, uponthefirst Monday of December,1820, shall be and thesameare hereby postponed until the first Monday of December, 1822.
Befhre the first Monday of December, 1822, another law was on-acted having special reference to those lands upon which the taxes had not been paid previous to 1820, and is applicable to such lands alone. It is a complete system in itself, and has no reference to« the act of 1820. It was passed on January 30,1822, and is entitled “ an act, providing for the remission of penalties, and for the ealeof land for taxes.”
Section 1 provides: “ That all taxes, interest, and penalties, which have accrued and become due upon lands, and remain unpaid,«prior to the year 1820, shall be collected in the manner hereinafter prescribed.”
Section 2 provides that the treasurer of the state, and the respective county treasurers, shall be authorized to receive, until December then next following, all arrearages of land taxes which had become due previous to the year *1820, with the interest thereon, and if the arrearages of taxes and interest should be paid by or before the time specified, all penalties which had accrued thereon were to be remitted.
By section 3 of the act, it was made the duty of the auditor of state, before the 1st of May then next, to transmit to the several-county auditors lists of the lands upon which arrearages of taxes, charged previous to 1820, were due, with a list of the delinquent lands for the year 1820, and transmit the same to the auditors of the respective counties. After correcting this list, it was made the duty of each county auditor to give notice, by publication, of this list. And it is further made the duty of the state auditor to-give notice, in the National Intelligencer, that all arrearages of taxes which may have been due previous to 1820, with the interest thereon, would be received until the 10th day of December next thereafter, exempt from all penalties which might have accrued prior to the year last aforesaid.
By the next section it is made the duty of the auditor of state, after having made all necessary corrections, to transmit to the several county auditors lists of all lands Upon which the taxes, interest, and penalties accruing prior to 1820 still remain due, adding to the same the taxes and penalties accruing upon the same land subsequent to the year aforesaid,
*443 By the next section the county auditor is required forthwith,, after the receipt of the list last aforesaid, to “ cause a transcript, thereof to be advertised for six weeks successively in some newspaper having general circulation in such county where the lands lie, which advertisement shall set forth that at the next succeeding court of common pleas of said county a motion will be made for a judgment, in the name of the State of Ohio, for the amount, of said tax, interest, and penalties, against the person in whose name said taxes, interest, and penalties are charged.” It is then made the duty of the county auditor to appear before the court according to the advertisement, and move for a judgment, which judgment *the court is authorized to render. This judgment is made a-matter of record in the court.
In the case before the court such judgment had been rendered, and a record made by the clerk. So far there is no complaint.. Provision is next made that the clerk of the court shall make out. a list of these judgments, with an order of court for the sale of such lands to satisfy the judgment or judgments, and deliver the same to the county auditor, who is directed to sell said lands in the manner' specifically provided. Previous to sale advertisement, must be made in some newspaper for thirty days, and the lands are to, be sold to the person who will satisfy the judgment or judgments for the least number of acres. It is further required that the auditor, at the next term of the court of common pleas after the sale, make return of all sales by him made to the court, and if, upon examination, the court find that the proceedings-have been in accordance with law, deeds ai*e to be ordered to be made to the purchaser or purchasers.
The tenth, and last section section of the act, provides, “That where any tract or part of a tract of land charged for the payment of taxes, and exposed to sale as aforesaid, is not sold for want of bidders, it shall be the duty of the auditor offering the same for sale to return the same to the auditor of state, on or before the 15th day of December next after the time said land was offered for sale, and the auditor of state shall make a record thereof, and> the same shall be considered as forfeited to the State of Ohio, and be subject to be disposed of in such manner as any future legisla^ ture may direct.”
Perhaps it was not necessary to give so full an abstract of tha provisions of this act, but I have done it for the purpose of *444 making it apparent that there was no necessary connection between it and the act of 1820. Both acts have, it is true, one common object—that is, to secure the collection of taxes on land, but not upon the same land. The act of 1820 introduced a new system of taxation, and is intended to operate upon current and subsequent taxation. It is entirely ^prospective, and has reference to all the lands in the state. The act of 1822, although a general law, has reference to such lands as were delinquent for the non-payment of taxes previous to 1820. The leading object of the law was to secure the payment of these back taxes, although it was provided that if the land's thus delinquent continued to be delinquent after 1820, the taxes accruing subsequent to that period should be included in the judgment, as well as those which accrued before. The mode of collection is entirely different. Under the law of 1820, if any tract of land was delinquent for the non-payment of taxes for two successive years, it was made the duty of the county auditor to sell the same. Under the ■law of 1822, there could be no sale without a previous judgment rendered by a court of record. By this law, it is true, as by the law of 1820, the land was to be sold by the county auditor; but in making such sale, he acted under an order of the court as much as does the sheriff of a county in making sale under execution. It was his duty in the evenfof a sale to make return to the court, and before any conveyance could be made the sale must be approved by the court and a deed ordered. If no sale was made, the return was to be made to the auditor of state, or rather the lands which were not sold were to be so returned.
To my mind it is apparent that there is no necessary connection between these two statutes, nor can there be any more propriety in resorting to the act of 1820 to give a construction to the act of 1822 than to any previous act on the subject, except so far as particular provisions of the act of 1820 are made part of the act of 1822 by special reference thereto. Nor did this latter act purport to be amendatory to the former. Under such circumstances it ■does not follow as a matter of course, that although it might be necessary to prove that lands were advertised for sale by the production of the records of the county auditor when those lands were sold under the law of 1820, therefore the same description •of evidence must be produced, where the land was sold under tho law of 1822.
*445 Having made these general remarks upon these two laws, *1 now proceed to consider the question presented in the bill of exceptions. Nathaniel Gates was examined as a witness in open court. He held the office of county auditor at the time the lands in controversy were claimed to have been exposed to sale under the provisions of the act of 1822. His test imony was received subject to exceptions, but was finally excluded and overruled by the court. The bill of exceptions shows that in connection with the testimony of Gates, certain books kept by him as auditor of the county, and a newspaper containing the advertisement for sale, were also before the court, and were also rejected, as well as the testimony of Gates. This testimony was offered, as the bill of exceptions shows, “ as proof of the fact that an order of sale of said tract of land was delivered to the auditor of the county, as by Gates stated in his testimony." Was it legitimate testimony for this purpose? There was no controversy but that a judgment had been rendered and an order of sale made. But it was deemed necessary to prove that a list of judgments, as provided by section 6 of the act, had been delivered to the auditor. If necessary to make this proof, it could not be done by the production of the records of the court, because it had no connection with the action of the court. I find nothing in the law of 1822 which made it necessary that the fact of delivery should be recorded by the auditors of the county. It might then be proved, as any other matter in pais, by parol, and the man who received the list was as competent to prove its delivery as any other person. The best evidence which would have been introduced to prove the contents of the list, would have been the instrument itself. But the case shows that this had been lost and could not be produced. Therefore, it was competent to prove by the auditor that a copy entered by him in a book kept in the auditor’s office, and which was before the court, was a correct copy. It seems to us that the court of common pleas erred in ruling that the testimony stated in the bill of exceptions was not competent to prove the delivery of the list of judgments to the county auditor.
*This testimony was offered as proof further of the fact that notice of the sale of the land had been duly given. The transcript from the books of the county auditor shows a list of the judgments, in which is included one against the person in whose-name the land in controversy is taxed, with a statement of the *446 auditor that the same had been “ advertised in the 1 Gallia Free Press,’ April 12, 1823, and continued six weeks,” and then follows a copy of the advertisement.
I have not been able to discover in what respect this entry upon the auditor’s book, is not sufficient proof that notice of the sale of -the land had been duly given. But if the fact was not sufficiently • proven by this record, or even if there had been no such record, •could the legality of the notice be proven by the production of the newspaper in which it was contained, accompanied by proof that it been continued the requisite length of time?
It must be borne in mind that if sales wore made, return must be made to the court of common pleas for confirmation. One ■question with the court, and perhaps the most important one, would be whether the sale had been duly advertised. Can there be any doubt that the production of a newspaper containing the advertisement, accompanied by proof as before stated, would be the very -evidence which would be required by the court? I apprehend ■not. It is the evidence required preliminary to the confirmation of a sheriff’s sale, and would be equally proper preliminary to the confirmation of a sale made by a county auditor. Indeed, the .sufficiency and competency of such proof for such a purpose, does not seem to be controverted by counsel. But it is insisted, that inasmuch as the land offered for sale and not sold, is to be returned to the auditor of state, to lay a foundation for a forfeiture, the proof of publication of notice of sale, so far as these lands were ■ concerned, must be matter of record in the books of the county auditor. I can see no reason for the distinction. Certainly the act of 1822 does not require any record to be made relative to “ the advertising” of land for sale. This matter rested *ontiroly in parol previous to the act of 1820, and although such record is required by that act relative to sales under it, the act itself has no reference to lands delinquent for non-payment of taxes prior to its passage.
There is certainly no reason that greater strictness should be required, in order to justify a return of the lands not sold, to the auditor, than is required where there is an actual sale. Indeed, the injury to the previous owner is much greater where the land is sold, than where it is so returned. True, the law provides i-that the land so returned shall be forfeited to the state. Much land «has been so forfeited. But the legislature have never treated this *447 forfeiture as vesting tbe title in the state for any other purpose ■than as security for taxes due and owing. And whenever any of this forfeited land has been sold, it has been done under laws providing that if sold for more than the taxes due, the surplus should be placed to the credit of the former proprietor. In an action by such proprietor for the recovery of such forfeited land, we do not suppose that a defendant could defeat the plaintiff’s action by showing merely that the land had been forfeited. He must show, in addition, that it has been sold as such forfeited land. Proving an outstanding title in the state by forfeiture, would not be sufficient.
The evidence overruled and rejected by the court, was offered to prove further that the land was offered for sale at auction, and •that it was not sold for want of bidders.
The transcript from the auditor’s boobs contains a statement that on the day appointed for the sale, the county auditor pro-ceeded to offer the land for sale, pui’suant to the notice, offering each tract separately, and that certain specified tracts were sold to certain individuals. The same transcript shows that other parcels of the land were not sold for want of bidders. There may be some informality in these entries, but in our apprehension, the testimony was competent, and the court of common pleas erred in excluding •and overruling it.
The question presented, is not whether the the evidence excluded 5|<was sufficient to sustain the defense relied upon by the defendant, but whether it was competent for the purposes for which it was offered. This evidence of itself would not have been •sufficient to prove that the land was forfeited, much less to prove its sale as forfeited land. Before the land could be considered as forfeited, further steps must be taken. But the evidence was competent as conducing to prove facts preliminary to a forfeiture. In ■excluding and overruling it, the court of common pleas erred. The judgment of that court is therefore reversed, and the cause remanded for further proceedings.
Avery, J.,
to one of the points decided, dissented, holding that there should have been record ovidence of the advertisement, and that parol evidence that notice of sale was given, was inadmissible.